UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH P.,[1] | ) | CIVIL ACTION NO. 4:23-CV-1011 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Kenneth P. ("Plaintiff") is an adult who lives in the Middle District of Pennsylvania. On December 8, 2006, Plaintiff was found disabled under Title II of the Social Security Act. On April 13, 2021, the Commissioner of Social Security issued a continuing disability review decision in which he concluded that Plaintiff was no longer disabled. Plaintiff seeks judicial review of the Commissioner's continuing disability review decision. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that federal courts refer to plaintiffs in social security cases by their first name and last initial. We adopt this recommendation in our opinion.

This matter is before the undersigned magistrate judge upon consent of the parties pursuant to 28 U.S.C. § 636(c). (Doc. 5). After reviewing the parties' briefs, the Commissioner's continuing disability review decision, and the relevant portions of the certified administrative transcript, we find that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision is reversed, and this case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was found disabled beginning May 8, 2006, in a decision dated December 8, 2006. (Admin. Tr. 12; Doc. 7-2, p. 13). The Social Security Administration initiated a continuing disability review and found that Plaintiff's disability ended on September 25, 2020 because he failed to cooperate with their attempts to gather evidence during the course of this review. (Admin. Tr. 59-67; Doc. 7-3, pp. 2-10).[2]

Plaintiff requested reconsideration, and a hearing. (Admin. Tr. 75-76; Doc. 7-4, pp. 5-6). On February 24, 2021, a telephone hearing was conducted before a

---

[2] 20 C.F.R. § 404.1579(e)(2) ("If there is a question about whether you continue to be disabled and we ask you to give us medical or other evidence or to go for a physical or mental examination by a certain date, we will find that your disability has ended if you fail, without good cause, to do what we ask.").

Disability Hearing Officer. (Admin. Tr. 77; Doc. 7-4, p. 7). On April 13, 2021, the Hearing Officer found that Plaintiff's disability ended on April 13, 2021. (Admin. Tr. 90-99; Doc. 7-4, pp. 20-29).

Plaintiff requested a hearing with an Administrative Law Judge ("ALJ"). (Admin. Tr. 111; Doc. 7-4, p. 41). On January 5, 2022, an ALJ held a telephone hearing, which was attended by Plaintiff, his attorney, and a vocational expert. (Admin. Tr. 10; Doc. 7-2, p. 11). On June 29, 2022, the ALJ issued a written decision in which he concluded that Plaintiff's disability ended on April 13, 2021. (Admin. Tr. 21; Doc. 7-2, p. 22).

Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 202-04; Doc. 7-4, pp. 132-34). On April 25, 2023, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1-4; Doc. 7-2, pp. 2-5).

On June 21, 2023, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's continuing disability review decision terminating Plaintiff's disability insurance benefits is not supported by substantial evidence. (Doc. 1, ¶ 8). As relief, Plaintiff requests that the court "find that Plaintiff is entitled to receive Social Security Disability Insurance Benefits as a result of his impairments which have caused marked and severe functional limitations causing

her [sic] to be considered disabled as of April 14, 2021 and continuing forward." (Doc. 1, p. 3).

On August 11, 2023, the Commissioner filed an answer. (Doc. 6). In the answer, the Commissioner maintains that the continuing disability review decision was made in accordance with the law and is supported by substantial evidence. (Doc. 6, ¶ 6). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 7).

Plaintiff's Brief (Doc. 8) and the Commissioner's Brief (Doc. 10) have been filed. Plaintiff did not file a reply brief. This matter is now ready to decide.

## III.   LEGAL STANDARD

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence

---

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

_____

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Page 6 of 22

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## IV.    DISCUSSION

In his brief, Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, then argues that "it is clear he has not improved and to the contrary, has actually worsened." (Doc. 8, p. 5). We construe Plaintiff's brief as raising arguments that (1) substantial evidence does not support the ALJ's finding of medical improvement at step three of the eight-step sequential evaluation process; and (2) substantial evidence does not support the ALJ's assessment of Plaintiff's current RFC.

We will begin our analysis by summarizing the ALJ's decision. Then we will address Plaintiff's first argument. Because this argument compels that this case be remanded for further proceedings, we decline to address Plaintiff's second argument.

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

To the extent any further error exists, it may be addressed by the Commissioner on remand.

### A.    THE COMMISSIONER'S PERIODIC REVIEW OF ENTITLEMENT TO DISABILITY BENEFITS

To receive disability benefits under the Social Security Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14]

The Commissioner uses a five-step process to make this eligibility determination. Once disability is found, the Social Security Act and regulations require that a claimant's status be periodically reviewed to confirm that he or she remains disabled.[15] This is commonly referred to as "continuing disability review." During this process, the decision-maker must determine whether there has been any

---

[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[15] 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594.

medical improvement in the claimant's ability to work and whether one or more of the exceptions to medical improvement applies using an eight-step process set forth in the Commissioner's regulations.[16]

In this case, we are called upon to review an ALJ's analysis of this eight-step process, in a decision issued on June 29, 2022. Before turning to the merits of Plaintiff's argument, we will summarize the ALJ's findings in that decision.

At step one, the decision-maker must determine if the claimant is engaging in substantial gainful activity.[17] If so, this directs a conclusion that the claimant is no longer disabled.[18]

In this case, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point through June 29, 2022. (Admin. Tr. 12; Doc. 7-2, p. 13).

At step two, the decision-maker must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listing of impairments").[19] If the claimant has an impairment that meets or equals the severity of a listed impairment, the claimant's disability continues.[20]

---

[16] 20 C.F.R. § 404.1594.
[17] 20 C.F.R. § 404.1594(f)(1).
[18] *Id.*
[19] 20 C.F.R. § 404.1594(f)(2).
[20] *Id.*

In his decision, the ALJ identified Plaintiff's medically determinable impairments as of April 13, 2021 as: degenerative disc disease of the lumbar spine, lumbar stenosis, lumbar fusion at L3-4, left knee internal derangement, status-post ACL repair and medial meniscectomy, and recurrent ACL/MCL tear. (Admin. Tr. 12; Doc. 7-2, p. 13). He concluded at step two that the combination of these medically determinable impairments did not meet or equal the severity of any impairment within the listing of impairments. (Admin. Tr. 12-14; Doc. 7-2, pp. 13-15).

At step three, the decision-maker must determine whether medical improvement has occurred.[21] To determine whether medical improvement has occurred, the decision-maker will compare the current severity of the impairments present at the time of the most recent favorable decision (i.e., the comparison point decision) with the severity of those impairments on the date the most recent favorable decision was issued.[22] If medical improvement has occurred, the decision-maker proceeds to step four.

In his decision, the ALJ identified Plaintiff's medically determinable impairments in the comparison point decision as: lumbar degenerative disc disease,

---

[21] 20 C.F.R. 404.1594(f)(3); 20 C.F.R. § 404.1594(b)(1)-(3) (defining medical improvement).

[22] 20 C.F.R. § 404.1594(b)(7); 20 C.F.R. § 404.1594(c)(1).

lumbar disc herniation, and lumbar spinal stenosis. (Admin. Tr. 12; Doc. 7-2, p. 13).

He then concluded that medical improvement of these back impairments occurred

because:

> by April 13, 2021, there had been a decrease in medical severity of the impairments present at the time of the CPD. As discussed below, the record indicates that the claimant had multiple surgeries since the CPD, and more recent treatment notes show that the claimant continues to do well with only conservative management. Recent examination notes also indicate that the claimant had some tenderness and reduced range of motion over his lumbar spine, and walked with a mildly antalgic gait, but otherwise had full strength, normal sensation, normal lower extremity range of motion, and had negative straight leg raise tests, as discussed in more detail below.

(Admin. Tr. 14; Doc. 7-2, p. 15).

In a different section of his decision, the ALJ summarizes that, prior to the

date of cessation of benefits:

> The claimant had surgery of his back . . . (Exhibit 4F/2). Examination notes from December 2019 indicate that the claimant had pain with palpation over his lumbar facets and bilateral SI joint (Exhibit 4F/3). There was some reduced range of motion observed (Exhibit 4F/3) . . . . Straight leg raise was positive, and the claimant had slightly reduced strength over his lower extremities (Exhibit 4F/3). Coordination and sensation were intact (Exhibit 4F/3-4).
>
> A June 2020 MRI of the lumbar spine showed L5-S1 right central disc herniation leading to bilateral lateral recess stenosis, moderate central canal stenosis, and moderate right-sided neural foraminal stenosis; postoperative study with metallic instrumentation at L3-L4 with likely decompressive laminectomy defects; L4-L5 moderate bilateral recess stenosis, moderate central canal stenosis, and moderate right-sided neural foraminal stenosis; and L3-L4 right central and lateral disc

protrusion/herniation leading to moderate right lateral recess stenosis and moderate right-sided neural foraminal stenosis (Exhibit 1F/5-6). An August 2020 MRI of the left knee showed a torn ACL repair graft, a complex tear of the posterior horn and body of the medial meniscus, degenerative tear versus partial meniscectomy involving the posterior horn and body of the lateral meniscus, moderate medial compartment osteoarthrosis, severe lateral compartment osteoarthrosis, mild patellofemoral compartment osteoarthrosis, and moderate knee joint effusion (Exhibit 1F/3).

(Admin. Tr. 16; Doc. 7-2, p. 17).

He observed that after the cessation date (April 13, 2021):

treatment notes from July and August 2021 indicate that the claimant was doing well with conservative management, and was able to move around with a knee brace (Exhibit 7F/11 and 15). At this time, the claimant attended virtual appointments, and there was no significant physical examination performed (Exhibit 7F/12 and 16). Follow-up treatment notes from October 2021 indicate that the claimant presented in moderate distress (Exhibit 7F/20). He had normal range of motion over his cervical spine (Exhibit 7F/20). The claimant had decreased lumbar lordosis, with tenderness observed over his lumbar spine (Exhibit 7F/20). There was lumbar spasm present, and he had decreased range of motion (Exhibit 7F/20). There were no trapezius trigger points observed (Exhibit 7F/20). . . . There was no SI joint tenderness present (Exhibit 7F/20). The claimant walked with an antalgic gait (Exhibit 7F/20). He had some decreased sensation and decreased strength over his lower extremities, but coordination was normal (Exhibit 7F/20). The record indicates that the claimant attended follow-up virtual appointments in December 2021; however, there are no significant physical examination findings from these appointments (Exhibit 7F/24 and 28). The record does not contain any evidence of follow-up treatment or objective examination notes after this time.

In April 2022, subsequent to the hearing and with claimant's consent, the claimant attended a physical consultative examination with Melita Konecke, MD (Hearing record and Exhibit 8F). Physical examination

from this time indicates that the claimant presented in no acute distress (Exhibit 8F/9). He walked with a minimally antalgic gait, but was able to walk on his heels and toes without difficulty (Exhibit 8F/9). He performed a full squat (Exhibit 8F/9). The claimant did not need any help getting on or off the examination table, and was able to rise from a chair without difficulty (Exhibit 8F/9). The claimant's lungs were clear to auscultation (Exhibit 8F/9). Straight leg raise was negative bilaterally in both the seated and supine positions, with no pain produced (Exhibit 8F/9). Joints were stable and nontender with no evidence of deformity (Exhibit 8F/9). There were no sensory deficits observed, and the claimant retained full strength over his upper and lower extremities (Exhibit 8F/9). There was no extremity edema present (Exhibit 8F/10). Hand and finger dexterity was intact, and the claimant was able to zip and tie without difficulty (Exhibit 8F/10). The claimant had some reduced range of motion over his lumbar spine, but range of motion was otherwise within normal limits (Exhibit 8F/17-20).

(Admin. Tr. 16-17; Doc. 7-2, pp. 17-18).

At step four, the decision-maker "must determine whether the medical improvement is related to the claimant's ability to work, *i.e.*, whether there has been an increase in the claimant's residual functional capacity ("RFC") based on the impairments present at the time of the most favorable medical determination."[23] If the decision-maker resolves this step in the negative, he or she continues to step five and determines whether a specified exception exists.[24] On the other hand, if the

---

[23] *Bryan S. v. Kijakazi*, No. 3:20-CV-11145, 2022 WL 2916072, at *3 (D.N.J. July 25, 2022) (citing 20 C.F.R. § 404.1594(f)(4)).

[24] 20 C.F.R. § 404.1594(f)(5).

decision-maker resolves this issue in the affirmative, or if certain specified exceptions exist, the ALJ must proceed to step six.[25]

In his decision, the ALJ acknowledged that, in the comparison point decision, the adjudicator found that his impairments resulted "in the residual functional capacity that the claimant was precluded from performing even sedentary work on a sustained basis." (Admin. Tr. 12; Doc. 7-2, p. 13).

The ALJ found that, since April 13, 2021, Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) except:

> the claimant should avoid unprotected heights and industrial machinery. He should avoid climbing ladders and scaffolds, but can occasionally climb ramps and stairs. The claimant could tolerate occasional exposure to extreme cold temperatures, vibrations, and wetness. He should be afforded the ability to alternate positions between sitting and standing every thirty minutes due to lower back and left knee pain.

(Admin. Tr. 14; Doc. 7-2, p. 15).

Then, the ALJ concluded that Plaintiff's medical improvement was related to his ability to work because the RFC "the claimant has had since April 13, 2021 is less restrictive than the one the claimant had at the time of the CPD." (Admin. Tr. 14; Doc. 7-2, p. 15). Because he resolved this question in the affirmative, the ALJ skipped step five and proceeded to step six. Therefore, we will not discuss step five.

---

[25] *Id.*

At step six, the decision-maker must determine whether all the claimant's current impairments in combination are severe.[26] If the claimant's current impairments, considered in combination, do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.[27] On the other hand, if the claimant's current impairments, considered in combination *do* significantly limit the claimant's ability to do basic work activities, the decision-maker must proceed to the next step.

The ALJ found that, as of April 13, 2021, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, lumbar stenosis, lumbar fusion at L3-4, left knee internal derangement status-post ACL repair and medial meniscectomy, and recurrent ACL/MCL tear. (Admin. Tr. 15; Doc. 7-2, p. 16). He also identified that Plaintiff had asthma, but that it was a medically determinable non-severe impairment. *Id.* Then, the ALJ proceeded to step seven.

At step seven, the decision-maker must assess the claimant's current RFC and determine whether, based on that RFC, the claimant can perform his or her past relevant work.[28]

---

[26] 20 C.F.R. § 404.1594(f)(6) (citing 20 C.F.R. § 404.1521).

[27] *Id.*

[28] 20 C.F.R. § 404.1594(f)(7).

As we noted above, the ALJ assessed that, as of April 13, 2021, Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) except:

> the claimant should avoid unprotected heights and industrial machinery. He should avoid climbing ladders and scaffolds, but can occasionally climb ramps and stairs. The claimant could tolerate occasional exposure to extreme cold temperatures, vibrations, and wetness. He should be afforded the ability to alternate positions between sitting and standing every thirty minutes due to lower back and left knee pain.

(Admin. Tr. 14; Doc. 7-2, p. 15). That assessment is accompanied by an explanation. (Admin. Tr. 15-19; Doc. 7-2, pp. 16-20). The ALJ found that Plaintiff had no past relevant work, as it is defined in 20 C.F.R. § 404.1565. (Admin. Tr. 19; Doc. 7-2, p. 20). Then, the ALJ continued to step eight.

At step eight, the decision-maker must assess whether the claimant can adjust to other work.[29] In doing so, the decision-maker must consider the claimant's age, education, past work experience, and current residual functional capacity. To support a finding that the claimant is not disabled at step eight, the Social Security Administration must provide evidence that other work Plaintiff can perform exists in significant numbers in the national economy. If the claimant can engage in other work, he or she is not disabled. If he or she cannot engage in other work, the disability continues.

---

[29] 20 C.F.R. § 404.1594(f)(8).

In this case, the ALJ concluded that Plaintiff could make a successful adjustment to other work. His conclusion is based on testimony given by a vocational expert that an individual with the same vocational factors and RFC as Plaintiff could perform the requirements of the following three occupations: (1) small products assembler, DOT #706.684-022, with 100,000 jobs available nationally; (2) cashier II, DOT #211.462.010, with 100,000 jobs available nationally; and (3) bakery worker, conveyor line, DOT #524.687-022, with 43,000 jobs available nationally. (Admin. Tr. 20; Doc. 7-2, p. 21).

### B. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S FINDING OF MEDICAL IMPROVEMENT

Pursuant to the Social Security Act, the Commissioner is required to periodically review, or conduct a "continuing disability review," in cases where a claimant has been awarded disability benefits. "When the [Social Security Administration ("SSA")] finds that a disability benefits recipient no longer has the physical or mental impairments to render him disabled, the SSA may determine that the recipient is no longer entitled to disability benefits."[30] For cessation of benefits, however, there must be substantial evidence of "'medical improvement' such that

---

[30] *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012) (citing 42 U.S.C. § 423(f)).

the recipient is 'able to engage in substantial gainful activity.'[31] A key component of this analysis is the comparison of the severity of a claimant's impairments at the time of the most recent favorable decision (i.e., the comparison point decision) to the current severity of the claimant's impairments.[32] When a decision-maker fails to compare medical records between a claimant's current impairments and the records relied on to make the comparison point decision, or fails to explain their comparison, courts often conclude that the decision is not supported by substantial evidence.[33]

---

[31] *Id.*

[32] *Id.* (citing 20 C.F.R. § 404.1594(b)(7) and 20 C.F.R. § 404.1594(c)(1)); *see also Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) ("[w]ithout such comparison, no adequate finding of *improvement* could be rendered"); *Venio v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (holding that an ALJ's decision in a continuing disability review case is not supported by substantial evidence when the ALJ failed to compare medical records).

[33] *See, e.g.*, *Bryan S. v. Kijakazi*, No. 3:20-CV-11145, 2022 WL 2916072, at *6 (D.N.J. July 25, 2022) (remanding where the ALJ did not compare the evidence supporting the comparison point decision with the current medical record, cite to any specific evidence upon which the comparison point decision relied); *Delgado v. Kijakazi*, No. 20-CV-4491, 2021 WL 5631773 (E.D. Pa. Dec. 1, 2021) (remanding where an ALJ "in summary fashion, concluded that Plaintiff had medical improvement without conducting the required comparison."); *Hemingway v. Comm'r of Soc. Sec.*, No. 2:19-cv-18387, 2020 U.S. Dist. LEXIS 242795, *7 (D.N.J. Dec. 23, 2020) (noting that "courts have vacated ALJ decisions that did not adequately compare the record supporting a prior favorable decision with the current record"); *Walters v. Saul*, 452 F. Supp. 3d 164, 177 (M.D. Pa. 2020), *report and recommendation adopted*, 2020 WL 1531369 (M.D. Pa. Mar. 31, 2020) (remanding where "[t]he ALJ's decision is devoid of any discussion of medical evidence leading up to the time of the most recent favorable disability decision.").

Courts have observed that, "[i]f there is to be an adequate comparison in an ALJ's determination of medical improvement, there must be evidence in the record pertaining to a claimant's CPD [or comparison point decision]."[34] "The regulations indicate that this is the expectation in CDR cases: 'If you are entitled to benefits because you are disabled, we will have your case file with the supporting medical evidence previously used to establish or continue your entitlement.'"[35] The regulations also provide a process that must be followed if the comparison point decision records are lost or unavailable to the decision-maker.[36]

---

[34] *Kunkle v. Kijakazi*, No. CV 21-850, 2022 WL 4609390, at *4 (W.D. Pa. Sept. 30, 2022).

[35] *Id.* (quoting 20 C.F.R. § 416.993(a)); *see also* 20 C.F.R. § 404.1593(a) (applicable in Title II cases).

[36] 20 C.F.R. § 404.1594(c)(3)(v) ("If the prior file cannot be located, we will first determine whether you are able to now engage in substantial gainful activity based on all your current impairments. (In this way, we will be able to determine that your disability continues at the earliest point without addressing the often lengthy process of reconstructing prior evidence.) If you cannot engage in substantial gainful activity currently, your benefits will continue unless one of the second group of exceptions applies (see paragraph (e) of this section). If you are able to engage in substantial gainful activity, we will determine whether an attempt should be made to reconstruct those portions of the missing file that were relevant to our most recent favorable medical decision (e.g., work history, medical evidence, and the results of consultative examinations). This determination will consider the potential availability of old records in light of their age, whether the source of the evidence is still in operation; and whether reconstruction efforts will yield a complete record of the basis for the most recent favorable medical decision. If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, medical improvement cannot be found. The documentation of your current impairments will provide a basis for any future

Substantial evidence does not support an ALJ's conclusion that medical improvement occurred in this case because the record before him did not include the comparison point decision or any of the evidence that decision was based on, and his analysis is based entirely on medical evidence that post-dates the comparison point decision.[37] Here, the comparison point decision file was not provided to the ALJ or this Court. (Admin. Tr. 22-26; Doc. 7-2, pp. 23-27). Although the ALJ summarizes findings from the comparison point decision, he does not cite to the source of that information. It appears that instead of relying on the decision or the medical evidence it was based on, he relied upon a Hearing Officer's summary of

---

reviews. If the missing file is later found, it may serve as a basis for reopening any decision under this section in accordance with the rules in § 404.988.").

[37] *See, e.g., Bryan S.*, 2022 WL 2916072, at *6-7 (remanding where an ALJ did not have access to the claimant's comparison point decision, and his four-sentence discussion of pre-comparison point decision evidence was limited to a single piece of evidence); *Bruno, M v. U.S. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-00886, 2020 WL 5269741, at *5 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom. Bruno v. Soc. Sec. Admin.*, No. 6:19-CV-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) ("The ALJ did not expressly recognize that the CPD is not in the record despite its importance to the determination of medical improvement. It appears that the ALJ did not have the CPD because, while the ALJ references the CPD in her decision, there is no citation to the CPD itself as evidence supporting her findings. Instead, the ALJ relied upon the findings of the Hearing Officer in support of what is alleged to be contained in the CPD, and particularly, the finding of significant medical improvement. Thus, it is unclear how, and upon what evidence, the finding of significant medical improvement was reached. Relevant information as to the severity of the claimant's impairments at the time of the CPD is presumably in the CPD file, which is necessary for an evaluation of medical improvement.").

that decision, which appears in the Hearing Officer's decision. (Admin. Tr. 93; Doc. 7-4, p. 23). Relying solely on the summary from that decision is not enough to support the ALJ's decision.[38] Further, the ALJ did not discuss any evidence dated before the comparison point decision, and instead focuses on evidence "prior to the date of cessation." He references back and knee surgeries that occurred on unspecified dates *after* the comparison point decision was issued, and then summarizes treatment records from late 2019 going forward. (Admin. Tr. 16; Doc. 7-2, p. 17) (citing Admin. Tr. 347; Doc. 7-7, p. 16).[39]

In short, we conclude that substantial evidence does not support the ALJ's decision in this case because the record available to the ALJ did not include the comparison point decision file, to the extent that file is unavailable the decision does not suggest whether 20 C.F.R. § 1594(c)(3)(v) was followed, and the ALJ did not discuss any evidence relied on in the comparison point decision to support his conclusion that medical improvement occurred.

---

[38] *Bruno M.*, 2020 WL 5269741, at *5 (finding that substantial evidence did not support an ALJ's decision where he relied exclusively on a Hearing Officer's findings of medical improvement).

[39] *Bryan S.*, 2022 WL 2916072, at *6-7 (finding that substantial evidence did not support an ALJ's finding of medical improvement because the ALJ did not adequately discuss pre-comparison point decision records).

Under the Social Security Act, this Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[40] The judgment concerning the proper form of relief in Social Security cases rests in the sound discretion of the Court. However, a decision to direct the award of benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to the benefits he seeks.[41] Here, the record is missing the comparison point decision file, and therefore has not been fully developed. We therefore find that remanding this matter for further proceedings, rather than the award of benefits, is the appropriate course of action.

## V.    CONCLUSION

Accordingly, for these reasons the Court reverses the Commissioner's decision and remands this matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Appropriate orders will be issued.

Date: May 19, 2025                            BY THE COURT

                                             *s/William I. Arbuckle*
                                             William I. Arbuckle
                                             U.S. Magistrate Judge

---

[40] 42 U.S.C. § 405(g).

[41] *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).